UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-CV-20872-LENARD/O'SULLIVAN

UNIVERSAL HANDICRAFT, INC.,

    Plaintiff/Counter-Defendant,

vs.

PARFUMS CHRISTIAN DIOR, S.A.,

    Defendant/Counter-Plaintiff.
_____/

**RENEWED MOTION TO BIFURCATE ACTION
INTO LIABILITY AND DAMAGE PHASES**

Plaintiff/Counter-Defendant, Universal Handicraft, Inc. ("Universal"), pursuant to Federal Rule of Civil Procedure 42(b), respectfully moves this Court for entry of an Order bifurcating this action into two separate and distinct phases: a first, liability phase, that will resolve the question of whether Universal's trademark is likely to cause confusion with trademarks owned by Defendant/Counter-Plaintiff, Parfums Christian Dior, S.A. ("Dior"); and, depending upon the outcome of the first phase, a second, damages phase. Universal also respectfully requests that this Court stay discovery on issues relevant solely to the second, damages phase pending the conclusion of the first phase. In support of this Motion, Universal respectfully refers the Court to the Memorandum of Law below.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION.**

This case presents two distinct and separate questions for resolution: First, whether Universal's trademark is likely to cause confusion with Dior's trademarks; and second, if the

1

trademarks are deemed to be confusingly similar, what damages, if any, are appropriate. The first issue is a relatively simple one, and it is an issue that has the potential for ending this action. If Universal prevails on the first issue, that will simultaneously entitle Universal to relief on its declaratory relief action and entitle Universal to prevail on Dior's claims of trademark infringement. Given the bright-line distinction between the two keys issues, considerable resources—including Court resources—may be preserved by resolving this action in phases, and resolving the simpler, preliminary issue of liability before delving into issues relating to damages and any applicable limitations on same. As such, the case is ripe for bifurcation.

There is a distinct probability that this case will not proceed beyond the question of liability. Under such circumstances, there is no way that Dior can justify the wasting of resources on an issue that may never be reached in the case.

When the factors relevant to bifurcation are considered in light of the issues presented, the only logical conclusion to be reached is that the factors support bifurcation. Accordingly, Universal respectfully requests that this Court bifurcate the action into liability and damage phases.[1]

## II. FACTUAL BACKGROUND.

The key question to be resolved in the first, liability phase of the action is whether Universal's ADORE ORGANIC INNOVATION trademark is likely to cause confusion with Dior's J'ADORE trademarks. In order to put this question into context, a brief history is appropriate.

---

[1] If the Court decides that this action should be bifurcated, the parties have already submitted proposed scheduling dates that would apply to the first, liability phase of the action. *See* [DE#19-2].

Case No. 13-CV-20872-LENARD

Since 2001, Universal has manufactured and sold various cosmetic and skin care products. The company made a name for itself by developing products that utilize or contain, *inter alia*, natural Dead Sea minerals combined with complex peptides. In 2012, Universal developed a new and innovative line of products utilizing plant stem cell technology. Combined with a unique blend of vitamins, essential oils, organic flower extracts and organic vegetable proteins, the new products represented a new, organic approach to skin care. Given the organic nature of the products, Universal launched this new line of products under the trademark ADORE ORGANIC INNOVATION, and within a few months of launching the brand, filed a trademark application for the trademark with the U.S. Patent & Trademark Office. Universal's ADORE ORGANIC INNOVATION products are sold through kiosks, retail stores dedicated to ADORE ORGANIC INNOVATION products including self-branded stores, and on-line through the www.AdoreCosmetics.com website.

Many months later—*after* Universal filed its federal trademark application and after it had invested significant sums in developing its own retail outlets for its new line of products—counsel for Dior sent a demand letter to Universal's prior counsel (the "Demand Letter"). In the Demand Letter, Dior asserted, without any evidence or substantiation, that Universal's ADORE ORGANIC INNVOATION trademark "is likely to confuse consumers and constitutes an infringement of [Dior's] mark J'ADORE" in violation of U.S. Trademark law.

Confident that its usage of the ADORE ORGANIC INNOVATION trademark was not likely to confuse consumers, and desirous of eliminating any economic uncertainty as it continues to invest in its own retail outlets, Universal filed a Complaint for Declaratory Relief [DE#1] with this Court. Universal's contends that when the relevant factors are applied, there is

Case No. 13-CV-20872-LENARD

no likelihood of consumer confusion between its ADORE ORGANIC INNOVATION mark and Dior's J'ADORE mark. Universal's contentions are based upon the following:

- the word marks ADORE ORGANIC INNOVATION and J'ADORE are dissimilar – the phrase J'ADORE is French, not English. Additionally, U.S. consumers are likely to construe phrase J'ADORE differently than and distinct from the English word "adore"[2];

- the presentation of the two marks and the products bearing those marks are different – products sold under the J'ADORE mark include Dior's house mark—DIOR—in close proximity to the J'ADORE mark. When J'ADORE appears on Dior's products, the mark generally appears in lower-case letters, often with the letters set so that they do not appear on the same line, and where the letters "d" and "r" appear raised when compared with the other letters. On the other hand, Universal's ADORE ORGANIC INNOVATION is generally presented with the English term ADORE in larger letters and on one line, and the words ORGANIC INNVOATION appearing in a somewhat smaller font adjacent to the word ADORE. Thus, the appearance of Universal's ADORE ORGANIC INNOVATION mark and Dior's J'ADORE mark as actually used is different, resulting in a different overall impression created by the two marks;

---

[2] Dior's assertion of confusion represents something of a change in position. When Dior sought to register the J'ADORE mark in the U.S., there were already registrations granted for the marks "ADORE" and "ADORE PLUS" in the class of goods that includes cosmetics, and the same class of goods that covers both Dior's products and Universal's products. At that time, Dior did not take the position that the ADORE mark was confusingly similar to its J'ADORE mark, because doing so would have precluded Dior from obtaining a U.S. trademark registration. Now that Dior has obtained a U.S. trademark registration, it is attempting to take a contrary position in litigation.

- the products offered under the two marks do not compete with each other – Dior uses the J'ADORE mark in connection with perfume, eau de toilette or toilet waters, and body milks, and these products differ from the skin care products that Universal sells;

- Universal and Dior use completely different sales channels with regard to products bearing the marks at issue in this action – the products bearing ADORE ORGANIC INNOVATION are sold through kiosks, retail stores dedicated to ADORE ORGANIC INNOVATION products including self-branded stores, and on-line through the www.AdoreCosmetics.com website. In contrast, products sold under the J'ADORE mark are sold through various retail establishments, including Sephora and Nordstrom. Consumers will not find J'ADORE products and ADORE ORGANIC INNOVATION products in close proximity to one another in the same stores; and

- Universal and Dior employ different advertising methods to promote their products.

Even overlooking these factors, there is one very significant factor. To date, Universal is unaware of any instance of actual confusion by the consuming public between Dior's J'ADORE products and Universal's ADORE ORGANIC INNOVATION products. In light of Dior's Answer, it would seem that it also has no knowledge of any instances of actual confusion. *See* [DE#5], at ¶24. Nonetheless, Dior asserts in its counterclaim that the marks are confusingly similar, notwithstanding that such an assertion is tantamount to an insult to the intelligence of the average Dior customer. Dior's customers—indeed, any consumers who can afford Dior's

Case No. 13-CV-20872-LENARD

products—are sufficiently sophisticated to understand that there is a difference between J'ADORE and ADORE ORGANIC INNOVATION, especially when the mark on Dior's products appears in close proximity to the DIOR house mark.

Ultimately, Dior intends to prove that there is a likelihood of confusion, despite the significant hurdles associated with that effort. Given the uphill battle that Dior faces, it is economically inefficient and a waste of valuable judicial resources to litigate the issues of damages before the Court has made a determination as to liability. Accordingly, Universal respectfully requests that this Court bifurcate this action, and stay the damages phase issues pending the resolution of the liability phase of this action.

### III.   ARGUMENT.

#### A.   Rule 42 Permits Bifurcation Of The Liability And Damage Phases Of This Action.

##### 1.   Factors Relevant To Bifurcation.

The Federal Rules of Civil Procedure permit this Court to bifurcate issues for convenience, to avoid prejudice, and for reasons of efficiency. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). In addition to these factors, courts in this Circuit may consider

> (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or

confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

*Kimberly-Clark Corp. v. James River Corp. of Va.,* 131 F.R.D. 607, 608-09 (N.D. Ga. 1989).

The Eleventh Circuit recognizes that Rule 42(b) "confers broad discretion on the district court in this area, permitting bifurcation merely 'in furtherance of convenience.'" *Harrington v. Cleburne County Bd. of Educ.,* 251 F.3d 935, 938 (11th Cir. 2001). Rule 42(b) "affords a district court discretion to order separate trials where such order would further convenience, avoid prejudice, or promote efficiency." *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1301 (11th Cir. 2001). Moreover, the question of "[w]hether to bifurcate a trial is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Brown v. Toscano*, 630 F. Supp. 2d 1342, 1345 (S.D. Fla. 2008).

### 2. Trademark Cases Are Well-Suited For Bifurcation.

Courts have historically recognized that "[c]laims for monetary relief in trademark actions are generally litigated at a separate hearing, after the determination of liability." *Robert Bruce, Inc. v. Sears, Roebuck & Co.*, 343 F. Supp. 1333, 1348 (E.D. Pa. 1972). As such, Circuit Courts have recognized that District Court enjoy broad discretion to bifurcate the proceedings in a trademark infringement case such that the liability is determined in a first phase before damages. *See, e.g.*, *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1182 (5th Cir. 1980) (noting that district court had granted plaintiff's motion to bifurcate the issues of liability and damages in a trademark infringement action); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1088 (9th Cir. 2005) (holding that the district court did not abuse its broad discretion in bifurcating a trademark infringement action and trying the liability phase first); *see also Mag Instrument, Inc. v. J. Baxter Brinkmann Intern. Corp.*, 123 F.R.D. 543, 544–45 (N.D. Tex. 1988) ("Trials of

Case No. 13-CV-20872-LENARD

liability and damages are often bifurcated.  This type of bifurcation is 'an effective method of simplifying factual presentation, reducing costs, and saving time.'" (quoting *MCI Communications v. AT & T*, 708 F.2d 1081, 1167 (7th Cir. 1983))).

"[T]he issues of validity, title, infringement, and damages in patent and copyright cases may be separately tried, unless this course will inconvenience the court or seriously prejudice the rights of some of the parties."[3]  *Swofford v. B&W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964).  The *Swofford* Court recognized that the issues of liability and damages are **not** interwoven.  *Id.*  As the *Swofford* Court opined

> we cannot think of an instance in a patent action where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others without confusion and uncertainty . . . .

*Id.*  The same factors and considerations are present in the instant case.  Ultimately, the Fifth Circuit[4] approved the District Court's order bifurcating the "issues of validity, infringement, and

---

[3] Trademark infringement cases are similar to patent and copyright infringement cases in that the issue of damages is generally not interwoven with the issue of infringement.  Thus, such infringement cases may also provide guidance as to whether to bifurcate this action into liability and damage phases.  *See Joint Stock Society v. UDV North America, Inc.*, 53 F. Supp. 2d 692, 702 (D. Del. 1999) ("Although all four of these cases involved actions for patent infringement, the court can properly look to them for guidance given the similarities between patent and trademark law on this issue."); *Revlon, Inc. v. Heaven Scent Cosmetics, Ltd.*, no. No. CV 89–3582, 1991 WL 200209, at *5 (E.D.N.Y. Oct. 2, 1991 ) ("The case law on monetary recovery in trademark infringement cases is a confusing melange of common law and equity principles, sometimes guided (and mis-guided) by analogies to patent and copyright law, and finding little statutory guidance in the Lanham Act." (quoting 2 J. McCarthy, Trademarks and Unfair Competition, § 30.24, at 495 (2d ed. 1984)); 5 J. McCarthy, Trademarks and Unfair Competition, § 30:58, at 30-140 (4th ed. 2013)).

[4] The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc)*.

Case No. 13-CV-20872-LENARD

any other issues which relate to defendant's liability to be tried separately from the issue of damages." *Id.* at 415.

As the Court can see from the identification of issues above, the issues of liability and damages are sufficiently distinct and separate that each phase may be tried alone without any resulting injustice. Universal respectfully suggests that the same benefits of bifurcation as were found by the *Swofford* Court are present in this case, and the rationale supporting that decision should be followed here.

### 3.     Bifurcation Will Preserve Resources.

Bifurcation is a means of preserving resources in cases where a verdict for either party on liability may obviate the need for damages discovery and trial, or may facilitate a settlement. *See, e.g.*, *M2 Software*, 421 F.3d at 1088 (trademark case); *Mag Instrument*, 123 F.R.D. at 544–45 (trademark, patent, and unfair competition case); *Smith v. Alyeska Pipeline Service Co.,* 538 F. Supp. 977, 984 (D. Del. 1982) (patent case); *Naxon Telesign Corp. v. GTE Information Systems,* 89 F.R.D. 333 (N.D. Ill.1980) (patent case); and *Shepard v. International Business Machines, Corp.,* 45 F.R.D. 536 (S.D.N.Y. 1968) (patent case). Bifurcating damages now will conserve the time and resources of both the Court and the parties in the likely event that Dior does not prevail on its Counterclaim and Universal prevails on its claim for declaratory relief. If no liability is found, expensive, intrusive and time-consuming discovery may be avoided. Bifurcation would also obviate the need to engage damages experts, or pay for the preparation of expert reports on damages.

Ultimately, should damages discovery and trial be necessary, the potential for such additional costs in relation to the nominal amount of recoverable damages would likely facilitate

Case No. 13-CV-20872-LENARD

a settlement agreement. *See Mag Instrument*, 123 F.R.D. at 545 ("Furthermore, if the plaintiff prevails on liability, the parties will have a strong incentive to settle the case, thus rendering a time-consuming and difficult damages trial unnecessary."); *Smith*, 538 F. Supp. at 984 ("On the other hand, if the liability issues are resolved in [the plaintiff's] favor, then [the defendants] might very well settle the damages to avoid the lengthy trial.").

### 4. The Factors Of Convenience, Economy And Efficiency Weigh In Favor Of Bifurcation.

Bifurcation is particularly appropriate where, as here, resolving the issue of likelihood of confusion and thereby liability for infringement may eliminate the need for proceedings and a trial on damages. Conducting this action in separate phases to address the issues of likelihood of confusion and liability, and then if necessary, damages, satisfies the factors of convenience, economy and efficiency. If a jury returns a finding that there is no likelihood of confusion, there will be no need to proceed with the damages phase. Thus, proceeding in separate phases satisfies the convenience requirement, because it prevents the Court and jury from hearing testimony and reviewing evidence that may ultimately prove to be irrelevant to the outcome of this action.

Proceeding with the action in phases may also permit the parties to prevent damage discovery and related disputes from slowing the progress of the case, while simultaneously avoiding various expenses that would only be necessary if Dior can prevail on the liability issue (such as the cost of discovery and depositions relating to the issues of damages, damages experts, etc.). *See Mag Instrument*, 123 F.R.D. at 545 ("Moreover, if the defendants do not prevail entirely on liability, separate trials will still serve the purpose of Rule 42(b). If the jury finds certain bases of liability absent, then damage theories dependent on those bases, and evidence to support them, will not be presented, thus promoting expediency, economy, and convenience.

Case No. 13-CV-20872-LENARD

Consequently, bifurcation will eliminate the need for the jury to listen to complex damages testimony which ultimately would have no bearing on the case."); *Swofford v. B & W, Inc.*, 34 F.R.D. 15, 20 (S.D. Tex.1963) ("A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties.").

Finally, proceeding with the trial in separate phases will result in an efficient use of Court resources, taking up no more of the Court's and jury's time than would otherwise be necessary to determine whether there is any reason to proceed to the question of damages.

### 5. Bifurcation Will Enhance Juror Comprehension Of The Issues.

The issues of liability and damages should be bifurcated when the issues are so complex that a single proceeding would clutter the record and confuse the jury. *Smith,* 538 F. Supp. at 984-85. Resolution of the damages issue in this case would be a complex and time-consuming undertaking both prior to and during trial. Since the jury will already be faced with multiple claims concerning infringement and cyberpiracy, incorporating damages into the same proceeding will likely confuse the jury. *See id.* Bifurcating the proceedings will not only clarify the issues, but may also reduce the complexity of the damages issue if not all of the claims are successful.

### 6. None Of The Rule 42 Or Related Factors Weigh Against Bifurcation.

Dior has no legitimate basis for opposing bifurcation. Indeed, separating this action into the Liability Phase and Damages Phase will permit the Dior to avoid the unnecessary expense associated with discovery and experts regarding damages if there is no finding of liability. Thus, all of the relevant factors weigh in favor of bifurcation.

Case No. 13-CV-20872-LENARD

The case law is clear that the issues of liability and damages may be resolved in separate phases, and that actions should be bifurcated where the interests of justice may be served without unfairly prejudicing an opposing party. Conducting this action in separate phases will best accomplish this goal.

IV.  CONCLUSION.

Universal respectfully requests that this Court enter an Order bifurcating the action accordingly, and staying discovery on damages pending the resolution of the first, liability phase of the action.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

Respectfully submitted,

s/ Samuel A. Lewis
By:_____
Jeffrey D. Feldman / Fla. Bar No. 330302
E-mail:  JFeldman@FeldmanGale.com
Samuel A. Lewis / Fla. Bar No. 55360
E-mail:  SLewis@FeldmanGale.com
Susan J. Latham / Fla. Bar No. 687391
E-mail:  SLatham@FeldmanGale.com
David M. Stahl / Fla. Bar No. 84713
E-mail:  DStahl@FeldmanGale.com
**FELDMAN GALE, P.A.**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-358-5001
Facsimile: 305-358-3309
***Attorneys for Universal***

Case No. 13-CV-20872-LENARD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2013, the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

s/ Samuel A. Lewis
_____

## SERVICE LIST
*Universal Handicraft, Inc. v. Parfums Christian Dior, S.A.*
Case No. 13-CV-20872-LENARD/O'SULLIVAN

Harry R. Schafer, Esq.
E-mail: hrs@knpa.com
Ryan C. Zagare, Esq.
E-mail: rzagare@knpa.com
KENNY NACHWALTER, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

Laura Popp-Rosenberg, Esq.
E-mail: lpopp-rosenberg@fzlz.com
FROSS ZELNICK LEHRMAN &
   ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Facsimile: (212) 813-5901